United States District Court
District of Massachusetts

_____

Docket No. 04-10303

**United States,**

v.

**Rashaun Scott,**
_____

**Memorandum In Support Of Motion *In Limine* To Exclude Expert Opinion As To The Meaning Of Certain Jargon**
_____

**Issue**

Whether this court should exclude expert testimony as to the meaning of the word "things" (a) where the Government's expert seeks to testify that the term "things" is jargon or a street term specifically meaning a firearm, (b) where the word is so common and generic that no such meaning can reasonably be attributed to it, (c) where the jury is perfectly capable of determining the meaning of that term in the present context,

1

and (d) where the proposed expert testimony would ultimately invade the fact-finding province of the jury.

**Statement of Facts**

For purposes of this memorandum, the defendant assumes that the Government will present evidence consistent with the account set forth in the affidavit in support of the application for a search warrant filed by Officer George Almeida of the Brockton Police Department. The relevant portions of that affidavit are as follows:

> 2.  I have information based upon conversations with Peter Carver of the MA State Parole and Deputy Edmund Desmarais of the Bristol County House of Correction that there is a firearm unlawfully being stored at 26 Victory St.
>
> 3.  26 Victory St. is described as a brown, single family, wood construction home with the number 26 affixed to the front door.
>
> 4.  On Friday, May 14, 2004 at approx. 1200 hrs. I (Detective Almeida) spoke with Massachusetts Parole Officers Peter Carver and Jim McCarthy in regards to Rashaun Scott (D.O.B. 08/31/80). Parole Officer McCarthy informed me that he had received a call from Deputy Edmund Desmarais of the Bristol County House of Correction. Desmarais informed him that while monitoring Scott's phone calls he

heard Scott referring to some firearms at his home on 26 Victory St. Note: Rashaun Scott is currently an inmate at the Bristol House of Correction.

    5.  On Friday, May 14, 2004, I spoke with Deputy Edmund Desmarais by phone in regards to Scott's phone conversation. Desmarais informed me that inmate Rashaun had an open telephone account at the Bristol House of Correction (pin #113645). He stated that Scott placed a phone call to his home at 26 Victory St. (phone number 508-588-2607) on May 13, 2004. Deputy Desmarais was monitoring the live phone call at the time. Scott, at first, was heard speaking to his mother. He then asked to speak with his sister Cassandra. Deputy Demarais heard Rashaun speaking to his sister about what he believed to be firearms. He informed me that he would record a copy of Scott's phone calls from May 13, 2004 on compact disc and report to the Brockton Police station with same.

    6.  On Friday, May 14, 2004 at approx. 1450 hours, Detective Hilliard and I (Almeida) spoke with Deputy Desmarais at the Brockton Police Station. We were provided with a compact disk copy of Rashaun Scott's phone calls. Detective Hilliard and I listened to the recorded copy of Scott's phone calls. Rashaun was hearrd initially talking to his mother in regards to a home visit by a representative of the Massachusetts State Parole. He informed his mother that he would be speaking in riddles. Scott then asked to speak to his sister Cassandra

4

(referring to her by name). He then instructed Cassandra to enter his room and to look under the mattress for them "*things*". Detective Hilliard and I are both familiar with the street term "*things*" referring to firearms. He informed Cassandra that there are two "*things*" under the mattress. Scott instructed Cassandra not to say what she saw under the mattress over the phone. He was heard referring to one of the "*things*" as the long one. Cassandra told him that she saw the long one in his closet. He advised her to put the "*thing*" in her closet. Cassandra then advised Rashaun that their mother had found one of the "*things*" and threw it away. Rashaun became very upset upon hearing this. He asked Cassandra to put his mother on the phone and inquired about the "*thing*". She informed Scott that she threw the "*thing*" in a dumpster. Scott replied that he didn't want (Parole) to find it when they inspected the home. Cassandra then returned to the phone and began whispering, "the long one is still there." "Oh, Yeah", replied Scott. "Mom didn't know that one was in your room, the long one is still in your room," answered Cassandra. Scott replied, "You know what to do with that, I already told you what to do." While speaking with Cassandra Rashaun Scott is heard speaking to another inmate and says "My mother threw one of them away, but she didn't find the other one cuz I have one down, a quick load, so I can run in the house, quick load that fucka and run out of the house".

5

7. Brockton Police in house computer check revealed that Scott has been arrested in the past for firearms violations. On July 18, 2000, Scott was arrested for unlawful possession of a firearm and unlawful possession of ammunition. On January 13, 2001, Scott was arrested in Brockton for armed robbery, assault by means of a gun and intimidation of a witness. On March 27, 2002 Scott was arrested on a warrant and was found to be unlawfully in possession of ammunition. 26 Victory St. was given as Scott's home address at the time of booking on each arrest.

8. A board of probation check on Rashaun Scott revealed a past conviction for firearm violations. On December 11, 2002, Scott was sentenced to six (6) months in the house of correction for unlawful possession of a firearm.

9. Deputy Desmarais informed me that Rashaun Scott has informed House of Correction officials that his intended place of residence is 26 Victory St. upon release. Parole officer Peter Carver also informed me that Rashaun Scott has informed Massachusetts Parole that he will be living at 26 Victory St. upon his release from jail.

10. A board of probation check on the residents of 26 Victory St., Cassandra Scott, Edward Scott and Geraldine Scott, confirmed that none are licensed to carry firearms or possess firearms.

    11. Based on my experience as a Police officer, I know that those who own or possess firearms generally maintain possession of for a long time. Persons who own or possess firearms generally keep them on their person or in their residence because of firearms are somewhat expensive and do not easily wear out. In my experience, firearms are unlike narcotics or currency, which are often exchanged soon after being obtained. Firearms are similar to tools, which a householder buys and maintains over a long period.

    12. Based on the foregoing reliable information received from Deputy Desmarais and information received from Rashaun Scott's recorded jailhouse phone calls, this officer believes that there is probable cause that a firearm is unlawfully being concealed at the residence herein described.

## Argument

**I.   This Court Should Exclude Expert Testimony As To The Meaning Of The Word "Things" (A) Where The Government's Expert Seeks To Testify That The Term "Things" Is Jargon Or A Street Term Specifically Meaning A Firearm, (B) Where The Word Is So Common And Generic That No Such Meaning Can Reasonably Be Attributed To It, (C) Where The Jury Is Perfectly Capable Of Determining The Meaning Of That Term In The Present Context, And (D) Where The Proposed**

**Expert Testimony Would Ultimately Invade
The Fact-Finding Province Of The Jury**

The government seeks to offer expert testimony as to the meaning of the term "thing" or "things." According to the government, that term is a common slang expression or street term describing a firearm.  The defendant contends, however, that the term is so common and generic that no such meaning can be attributed to it. Further, the jury is perfectly capable of determining its meaning in the present context, and the proposed expert testimony would ultimately invade the fact-finding province of the jury as to the key issue in this trial.  The Government's motion should be denied, and the proposed experts should be precluded from testifying on this subject.

A district court may admit expert testimony if it finds that the expert's "specialized knowledge will assist the trier

of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. However, the admission of such testimony is only warranted if the expert can provide the jurors with guidance on matters outside of their common experience. *See United States v. Lopez-Lopez*, 282 F.3d 1, 14-15 (1$^{st}$Cir. 2002).

Criminals do use jargon to disguise their speech.[1] Such jargon or slang frequently

---

[1] See *United States v. Barrow*, 400 F.3d 109, 113 (2nd Cir. 2005) ("sniff" was a street term for heroin or cocaine); *Gousse v. Ashcroft*, 339 F.3d 91, 93 (2nd cir. 2003) (a bag, which was a street term for heroin); *United States v. Burton*, 288 F.3d 91, 104 (3rd Cir. 2002) (Task Force believed "five brick" to be a street term for 1000 grams); *United States v. Hamilton*, 263 F.3d 645, 650 (6th Cir 2001) ("Fresh wax" is a street term for stolen credit cards); *United States v. Robinson*, 167 F.3d 824, 827 n.2 (3rd Cir 1999) (A "speed-ball" is the street term for the often dangerous mixture of equal parts cocaine and heroin); *United States v. Hatchett*, 31 F.3d 1411, 1413 n.1 (7th Cir. 1994) ("Shopping" is a street term used by drug dealers and users referring to one's interest in purchasing drugs and demonstrates that persons using the term are knowledgeable of the drug culture lexicon); *United States v. Longbehn*, 898 F.2d 635, 640 n.9 (8th Cir.

refers to unlawful drug activities, but at times, slang terms have been used to refer to firearms. *See United States v. Flowers*, 981 F.Supp. 708, 709 (D. Mass. 1997) ("nines" is a common street term for nine millimeter caliber handguns); *State v. Perron*, 660 So.2d 903, 904 n.1 (La.App. 4 Cir.,1995) ("GAK" street term for gun). When the meaning of such a term is disputed and may have a particular meaning not obvious to a layperson, the Government may present expert testimony defining that term as it relates to the illegal activity. *See United States v. Guerra-Marez,* 928 F.2d 665, 675 (5th Cir. 1991) ("jury could have reasonably concluded that certain phrases used by [suspects] were code words for controlled substances"), *cert. denied,* 502 U.S. 917.

---

1990) ("Crank" is a common street term for methamphetamine).

10

Here, the words "thing" or "things" are so generic and common as to render any expert testimony meaningless. *See United States v. Acosta*, 965 F.2d 1248, 1249 (3rd Cir. 1992) (discussing the word "stuff"). The Government does not contend, for example, that the word describes a particular type or class of firearm, but seeks to show that the word applies to firearms in general.

Further, because the term is so common, its meaning depends entirely on the context in which it is used. The jury is perfectly capable of evaluating the context and determining the meaning of the word. In fact, by introducing such evidence, the Government seeks to invade the fact-finding function of the jury, "which in a criminal case the law assigns solely to the jury[.]" *Sandstrom v. Montana,* 442 U.S. 510, 523 (1979), quoting *United States v. United States Gypsum Co.,*

438 U.S. 422, 446 (1978). That is, in determining whether the defendant exercised dominion and control over the firearm seized from the apartment, the issue before the jury will be whether he was referring to firearms. The expert will, in effect, offer an opinion on the ultimate issue before the jury and will clearly invade the jurors' fact-finding function. *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997).

In the absence of a need for expert testimony on this subject, and where there is a high potential for the jurors to be misled, the proposed expert testimony should be excluded from trial.

## II. Conclusion

Based on the arguments and authorities set forth above, the defendant asks that his motion be allowed.

                              Respectfully submitted,

Rashaun Scott,
*By his attorney,*


C. Samuel Sutter
B.B.O. # 542496
203 Plymouth Ave.
Building #7
Fall River, MA  02721
(508) 647-8633

13